IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

TRENTON NATHAN TERRY, )
)
       Plaintiff, )
)
vs. ) Case No. 17-00138-CV-W-ODS
)
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
)
       Defendant. )

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income. For the following reasons, the Commissioner's decision is affirmed.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn A. Colvin as the Defendant in this suit.

relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1991, and is a high school graduate. R. at 854. Plaintiff previously worked as a sandwich maker, pizza delivery driver, production assembler, and marking clerk. R. at 235-40, 878. Plaintiff applied for disability and disability insurance benefits as well as supplemental security income, alleging a disability onset date of June 24, 2013. R. at 10. Plaintiff's applications were denied, and he requested a hearing before an administrative law judge ("ALJ"). R. 89-99. A hearing was held on December 11, 2015. R. at 850-880. In February 2016, ALJ Raymond Souza issued his decision, finding Plaintiff was not disabled. R. at 7-19.

In rendering his decision, the ALJ found Plaintiff has the following severe impairments: anxiety, depression, Asperger's syndrome, ADHD, PTSD, and personality disorder. R. at 12. The ALJ determined Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels with the following nonexertional limitations: he should avoid all use of hazardous machinery and all exposure to unprotected heights; he is limited to simple work (defined in the DOT as SVP levels 1 and 2), routine tasks, and occasional changes in the work setting, with no strict production quotas as emphasis on a per shift rather than per hour basis, and only occasional interaction with the general public, coworkers, and supervisors.

R. at 14. Based upon the RFC and the vocational expert's ("VE") testimony, the ALJ concluded Plaintiff could work as a linen room attendant, counter supply worker, and change house attendant.[2] R. at 18. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his appeal. R. at 1-4. Plaintiff now appeals to this Court.

---

[2] The ALJ's decision states Plaintiff can work as a "change out attendant (DOT 258.667-010)." R. at 18. The position of "change out attendant" is not found in the *Dictionary of Occupational Titles* (4th ed. 1991) ("DOT"). However, the Court believes, and the parties' briefs proceed on this assumption as well, that the ALJ intended to refer to the position of "change house attendant" identified in the DOT as position number 358.687-010. *See* Docs. #19, at 29; #22, at 14. The Court finds no error based on this mistaken identification.

2

## III. DISCUSSION

Plaintiff argues the ALJ's decision must be reversed because (1) the ALJ failed to consider whether Plaintiff met Listing 12.05C for intellectual disability, and (2) Plaintiff's RFC is not supported by the substantial evidence of the record.

### A. Listing 12.05C

Plaintiff argues the ALJ failed to consider whether he met Listing 12.05C for intellectual disability, and argues he meets this listing. When determining whether a claimant is disabled, the ALJ employs a five-step process. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Under step three, which is relevant to this Court's decision, the ALJ considers the severity of the claimant's impairment and whether the impairment meets or equals a listed impairment. *Id.* (quoting *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010)); 20 C.F.R. § 416.920(a)(4)(iii). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Id.* at 969 (quoting *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004)) (emphasis in original). The claimant has the burden of proving "his or her impairment meets or equals a listing." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citation omitted).

> Listing 12.05C states:
>
> Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ...
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

SOCIAL SECURITY ADMINISTRATION: PROGRAM OPERATIONS MANUAL SYSTEM, https://secure.ssa.gov/poms.nsf/lnx/0434132009 (last visited Nov. 29, 2017) (identifying operative Listing language effective for the period of Dec. 18, 2017 through Sept. 28, 2016). To meet Listing 12.05C, a person must show "(1) a valid verbal, performance, or

full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Additionally, one must meet the mandatory requirements in Listing 12.05's introductory paragraph, that is, demonstrating "deficits in adaptive functioning" that manifested prior to age 22. *Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010).

In rendering his decision, the ALJ stated Plaintiff did not meet impairments 12.04, 12.06, 12.08, and 12.10, but did not specifically state whether he considered Listing 12.05C. R. at 13. Plaintiff first argues the ALJ's decision should be reversed because the ALJ did not "reference or discuss whether Plaintiff's IQ meets or equals Listing 12.05C." Doc. #19, at 26. The Court disagrees because a failure to reference or discuss a particular listing is not reversible error if the ALJ's overall conclusion is supported by the record. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citations omitted) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").

Plaintiff also argues the ALJ's decision should be reversed because he met the requirements for Listing 12.05C. Although Plaintiff has two performance IQ scores of 75 (R. at 800, 819), the record includes one performance IQ score of 65 (R. at 797) when Plaintiff was about fifteen years old. Defendant concedes the ALJ's finding of severe impairments of anxiety, depression, Asperger's syndrome, ADHD, PTSD, and personality disorder fulfills the third *Maresh* requirement of an "additional and significant work-related limitation of function." However, Defendant contends Plaintiff has not met his burden to establish "deficits in adaptive functioning" that manifested prior to age twenty-two, as required by the introductory paragraph of Listing 12.05.

Several aspects of the record support finding Plaintiff has not established deficits in adaptive functioning prior to age twenty-two. First, Plaintiff has a history, beginning around age seventeen, of unskilled work classified by the VE at Specific Vocational Preparation ("SVP") level 2. R. at 235-240, 878. At the time of Plaintiff's hearing, he had worked at a retail store for over two years in an SVP 2 position, characterized as

4

light unskilled work. R. at 861, 878.³ Second, the ALJ noted Plaintiff's "wide range of normal activity" in his daily life. R. at 13. Plaintiff's hobbies include hanging out with friends, going to the movies, watching television, bowling, and hunting, but he reports a "lack of money" as a restriction on his activities. R. at 625-26. Plaintiff also reported being able to care for his personal hygiene, do dishes and laundry, cook simple meals for himself, drive, go out unaccompanied, and shop for himself. R. at 330-337. Furthermore, Plaintiff and his grandmother testified he can use a cell phone, and the record indicates Plaintiff enjoys online computer games. R. at 667, 856, 874.

Finally, the ALJ noted no medical opinion in the record indicated Plaintiff was so functionally limited that he could not perform basic work tasks at any exertional level. R. at 15. Although Plaintiff struggled in school, requiring special education classes and the assistance of a paraprofessional to graduate, the record does not contain a medical professional opining Plaintiff has a severe intellectual disability. Also, a consultative examiner, psychologist John Keough, found Plaintiff's "intellectual functioning is in the Borderline to Low Average Range." R. at 626. The lack of a severe intellectual disability, when considered with Plaintiff's work history and daily activities, precludes a finding of deficits in adaptive functioning existing prior to age twenty-two that would warrant finding Plaintiff meets or equals Listing 12.05C. *Compare Cheatum*, 388 F. App'x at 576-77 (finding Plaintiff's "Borderline Intellectual Functioning," work history, and daily activities did not establish deficits in adaptive functioning necessary to meeting Listing 12.05C) *with Lott v. Colvin*, 772 F.3d 546, 551-52 (8th Cir. 2014) (remanding to resolve inconsistencies in the ALJ's opinion and medical opinion evidence where the record did not contain an IQ score, but the ALJ found Plaintiff suffered from the "severe impairment of mild mental retardation"). As in *Cheatum*, Plaintiff's work history,

---

³ Plaintiff contends his work history is not substantial evidence that he does not have the requisite deficits in adaptive functioning. While prior work is not inconsistent with a finding of disability, Plaintiff's work history is relevant to whether he has shown deficits in adaptive functioning necessary to meet Listing 12.05C where Plaintiff has not otherwise met the requirements of Listing 12.05C. *See Cheatum*, 388 F. App'x at 576 n.3. The ALJ specifically noted Plaintiff's latest position in retail did not reach the substantial gainful activity level, but stated the position "evinces an ability to perform a variety of physical and mental work-related tasks that is inconsistent with [Plaintiff's] allegations in pursuit of disability benefits." R. at 16.

activities, and lack of a severe intellectual disability diagnosis, all of which were identified in the ALJ's opinion, indicates Plaintiff did not have deficits in adaptive functioning prior to age twenty-two necessitating a finding he met or equaled Listing 12.05C. Accordingly, the Court finds no reversible error in this respect.

### B. Plaintiff's RFC

One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Plaintiff contends the ALJ's RFC was not supported by substantial evidence.

In determining Plaintiff's RFC, the ALJ considered, among other things, Plaintiff's symptoms consistent with the objective medical evidence; the intensity, persistence, and limiting effects of Plaintiff's symptoms; medical records from treating physicians and consultative examinations; Plaintiff's work history; compliance with treatment; and a third-party function report submitted by Plaintiff's grandmother. R. at 12-19.

Plaintiff makes a number of objections to the RFC and the occupations the ALJ found suitable for Plaintiff. Plaintiff focuses on his difficulties in school where he required special education classes and the assistance of a paraprofessional, and notes he has "borderline intellectual functioning." Plaintiff also argues the suitable occupations listed by the ALJ require a math and language level above his capabilities. However, Plaintiff obtained a high-school diploma, and has a work history of occupations with the same or similar math and language level requirements as those identified by the ALJ. R. at 18, 235-240. Plaintiff argues his past positions cannot be used to compare the requisite math and language levels because the ALJ found Plaintiff could not return to his past work as a sandwich maker or pizza delivery driver, but this misses the mark. Plaintiff's RFC includes limitations on pace and skill of work because Plaintiff struggled with the pace of the fast-food industry, but nothing in the record indicates he was unable to perform the positions due to a math or language deficit. The ALJ did not err in determining occupations suitable for Plaintiff that involved unskilled work at math and language levels comparable to Plaintiff's previous positions.

6

Plaintiff also argues the ALJ improperly relied on the opinion of psychologist John Keough, who performed a consultative examination of Plaintiff.  R. at 624-26.  The Court finds Plaintiff's RFC properly accounts for limitations consistent with Mr. Keough's opinion, as well as other medical opinions in the record.  To the extent Plaintiff argues the ALJ improperly discounted Plaintiff's Global Assessment of Functioning ("GAF") scores, the Court notes a claimant's GAF score is not automatically determinative or controlling.  *E.g., Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010); *Juszczyk v. Astrue*, 542 F.3d 626, 632-33 (8th Cir. 2008).  Additionally, the ALJ noted Plaintiff's low scores are inconsistent with the objective medical evidence.  R. at 17.  This finding is consistent with notes where Plaintiff's GAF scores were low, but Plaintiff was repeatedly described as in a "good and stable mood," and received good marks in areas such as appearance, speech, thought content, and mental status during these same examinations.  R. at 645-52.  The Court finds the ALJ properly considered the medical opinion evidence in the record.

Finally, Plaintiff argues the ALJ erred in assessing his credibility and that of his grandmother, with whom Plaintiff lives.  As described above, Plaintiff's daily activities and hobbies do not support a finding of disability – he, among other things, regularly watches movies at home, goes to movies and hangs out with friends, goes bowling or hunting, and is able to care for himself.  R. at 330-37, 625-626.  Additionally, Plaintiff's ability to sustain employment, although not at the substantial gainful activity level, is evidence of his ability to work that is inconsistent with his allegations of severe disability.  Similarly, the ALJ gave little weight to Plaintiff's grandmother's third-party adult function report and hearing testimony because she alleged an inability to work that was inconsistent with the record.  The Court notes an ALJ may discount testimony of a household member who may profit from any benefits Plaintiff may obtain.  *See Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).  The Court will not substitute its judgment for that of the ALJ.  *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (stating "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").  The Court finds the ALJ did not err in analyzing Plaintiff's credibility, his grandmother's credibility, or formulating Plaintiff's RFC.

7

## IV. CONCLUSION

The Court concludes there is substantial evidence in the record as a whole to support the ALJ's decision. The Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

                                                         /s/ Ortrie D. Smith
                                                       ORTRIE D. SMITH, SENIOR JUDGE
DATE: November 30, 2017                   UNITED STATES DISTRICT COURT